UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENANCIO ESTEBAN RIEGO, | Case No.: 1:24-cv-01162-SKO (HC) |
| Petitioner, | ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (Doc. 23), DISMISSING PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE |
| v. | |
| WARDEN SCOTT, | |
| Respondent. | |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties having consented to the jurisdiction of the magistrate judge, on October 28, 2024, the case was reassigned to the undersigned for all purposes including trial and entry of judgment pursuant to 28 U.S.C. § 636(c)(1). (Doc. 18.)

Petitioner filed the instant petition on March 26, 2024, in the Northern District of California. (Doc. 1.¹) On September 30, 2024, the case was transferred to the Eastern District and received in this

---

¹ Citations are to ECF docket pagination.

1

1  Court. (Doc. 8.) On December 27, 2024, Respondent filed a motion to dismiss the petition. (Doc. 23.)
2  Petitioner did not file an opposition.

3        Petitioner challenges his continued detention by the Bureau of Immigration and Customs
4  Enforcement ("ICE").  He claims his prolonged detention without a bond hearing violates his
5  procedural due process rights under the Fifth Amendment, and he should be provided a bond hearing
6  before an immigration judge ("IJ") where the Government must justify his continued detention by
7  clear and convincing evidence.

8        For the reasons discussed below, the Court will GRANT Respondent's motion to dismiss and
9  DISMISS the petition.

10 **I.    BACKGROUND**

11       Petitioner is a native and citizen of the Philippines. (Doc. 23-1 at 3.) He was admitted to the
12 United States as a Lawful Permanent Resident on September 11, 1971, and has lived in the United
13 States for the past 53 years.  (Doc. 23 at 3.)

14       On August 10, 2012, Petitioner was convicted of continuous sexual abuse of a child and was
15 sentenced to 12 years imprisonment. (Doc. 23-1 at 3.) On April 18, 2023, ICE arrested and detained
16 Petitioner. (Doc. 23-1 at 3.) Based on his criminal history, ICE charged him with removability under
17 Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"). (Doc. 23-1 at 3.) Petitioner
18 was taken into ICE custody under the mandatory detention provisions in § 236(c) of the INA. (Doc.
19 23-1 at 3.) He has been in continuous custody since that time.

20       A bond hearing was scheduled before an IJ for May 2, 2023. On the date set for the bond
21 hearing, Petitioner withdrew his request to hold the hearing. (Doc. 23-1 at 26.)

22       On July 12, 2023, Petitioner with the assistance of counsel filed an application for asylum and
23 withholding of removal. (Doc. 23-1 at 29.)  Petitioner also filed an application for deferral of removal
24 under the Convention Against Torture. (Doc. 23-1 at 30.) At the initial hearing, counsel for Petitioner
25 conceded that Petitioner was ineligible for asylum and for withholding of removal. (Doc. 23-1 at 29-
26 30.) On November 16, 2023, the IJ denied Petitioner's application under the Convention Against
27 Torture and ordered Petitioner removed to the Philippines. (Doc. 23-1 at 29-39.)

28

On December 18, 2023, Petitioner appealed to the Board of Immigration Appeals ("BIA"). (Doc. 23-1 at 42.) The BIA dismissed the appeal on April 23, 2024. (Doc. 23-1 at 42.)

On May 19, 2024, Petitioner filed a petition for review and motion for stay of removal with the Ninth Circuit Court of Appeals. (Doc. 23-1 at 48.) The petition for review remains pending.

## II.   DISCUSSION

### A.   Due Process in Prolonged Immigration Detention

Petitioner has been detained for approximately 22 months pursuant to 8 U.S.C. § 1226(c) due to his prior conviction of an aggravated felony, the continuous sexual abuse of a child. Section 1226(a) permits the Attorney General to release aliens on bond, "[e]xcept as provided in subsection (c)." Section 1226(c) states that the Attorney General "shall take into custody any alien who" falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c)(2) then states that the Attorney General may release an alien described in § 1226(c)(1) "'*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original). In Jennings, the Supreme Court held that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" Id. (citing 8 U.S.C. § 1226(a)). The Supreme Court noted that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions." Id. at 304 (emphasis in original). Thus, the Supreme Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." Id. Here, Petitioner does not meet the conditions for release. Therefore, statutorily, § 1226(c) mandates detention. Petitioner contends that, although the statute mandates detention, his detention without a bail review hearing has become so unreasonably prolonged as to violate his Fifth Amendment procedural due process rights.

3

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

Petitioner initially challenges his detention as unconstitutional on its face. He contends that detention without a bond hearing is unconstitutional when it exceeds six months. (Doc. 1 at 10.) This argument was rejected by the Supreme Court in Jennings v. Rodriguez, 583 U.S. 281 (2018). In the alternative, Petitioner claims that an individualized bond hearing is required because in his case detention has become unreasonably prolonged. (Doc. 1 at 11.) The Supreme Court has not directly addressed the constitutionality of prolonged detention in the context of an as applied challenge to 8 U.S.C. § 1226(c); however, the Supreme Court's statutory decisions regarding mandatory detention provide guidance regarding prolonged detention in an as applied challenge under the Due Process Clause.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Court considered a due process challenge to detention of aliens under 8 U.S.C. § 1231, which governs detention following a final order of removal. The Court in Zadvydas read § 1231 to authorize continued detention of an alien following the 90-day removal period for only such time as is reasonably necessary to secure the alien's removal. Id. at 699. Zadvydas is distinguishable from the present case.

In Zadvydas, the aliens challenging their detention following final orders of deportation were ones for whom removal was "no longer practically attainable." Id. at 690. The Court observed that where, as there, "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." Id. (internal quotation marks and citation omitted). Zadvydas distinguished § 1231 from § 1226 on these grounds, noting that "post-removal-period detention, unlike detention pending a determination of removability, has no

4

obvious termination point." Id. at 697. Here, however, removal is practically attainable. As the Supreme Court noted in Jennings, "detention under § 1226(c) has a definite termination point: the conclusion of removal proceedings." Jennings, 583 U.S. at 304.

In Demore v. Kim, a lawful permanent resident alien challenged the no-bail provision of the Immigration and Nationality Act ("INA"), contending that his six-month detention violated due process because he had not been provided an individualized bond hearing. 538 U.S. 510. The Supreme Court rejected this claim, observing first that Congress, in its "broad power over naturalization and immigration proceedings," "regularly makes rules that would be unacceptable if applied to United States citizens." Id. at 521 (quoting Mathews v. Diaz, 426 U.S. 67, 79-80 (1976)). Additionally, detention pending removal necessarily serves the purpose of preventing aliens from fleeing prior to or during removal proceedings. Id. at 527-28. The Court also noted that detention under § 1226(c) has a definite termination point. Id. at 529. Although the Supreme Court did not specify an outer limit as to what constitutes a permissible detention period, it acknowledged that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases ... and about five months in the minority of cases in which the alien chooses to appeal." Id. at 530. The majority proceeded to hold that six months did not run afoul of the due process clause in part because the delayed proceedings were the result of the alien's own requests. Id. at 530–31.

In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which clarified that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring). Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional...."); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years without further inquiry into whether it was necessary to ensure

his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause"); Jensen v. Garland, 2023 WL 3246522 (C.D.Cal. 2023); M.T.B. v. Byers, 2024 WL 3881843 (E.D. Ky. 2024); Sanchez-Rivera v. Matuszewski, 2023 WL 139801 (S.D. Cal. 2023); Banda v. McAleenan, 385 F.Supp.3d 1099 (W.D. Wash. 2019).

B.  The Mathews Test

In analyzing whether a due process violation has occurred in this case, Petitioner urges the Court to employ the Mathews[2] test. (Doc. 1 at 12.) Respondent, however, contends that the multi-factor balancing under Mathews is unsupported by Supreme Court authority and is inappropriate in this context. (Doc. 23 at 4.)

The Ninth Circuit has noted that many courts have applied the Mathews test in considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). The Ninth Circuit stated that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Id. at 1206-07. The Court notes that the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of Mathews. See, e.g., Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-embracing test for deciding due process claims.").

Most district courts in the Ninth Circuit, however, have employed the Mathews test in the context of evaluating whether due process entitles a petitioner to a bond hearing. See, e.g., Jensen v. Garland, 2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020). Also, the Ninth Circuit has noted the common use of the Mathews test and assumed (without deciding) that it applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland,

---

[2] Mathews v. Eldridge, 424 U.S. 319 (1976).

6

53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the Mathews test in this case appropriate.

Under the Mathews test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

In the first factor, the Court must evaluate Petitioner's private interest. Petitioner has now been detained approximately 22 months. Compared to the six-month presumptive period set forth in Zadvydas beyond which continued detention becomes prolonged, Petitioner's 22-month detention qualifies as prolonged. Zadvydas, 533 U.S. at 701. In addition, the Ninth Circuit has held that an individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). Thus, at first blush, the factor appears to weigh in favor of Petitioner.

However, in Rodriguez Diaz v. Garland, the Ninth Circuit stated that "in evaluating the first prong of the Mathews analysis, we cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order." 53 F.4th at 1208. The Ninth Circuit stated it was "important not to overstate the strength of Petitioner's showing under the first Mathews factor" because detentions longer than six months were considered "prolonged" in the context of detentions "for which no individualized bond hearings had taken place at all." 53 F.4th at 1213. In Rodriguez Diaz, the petitioner had received a bond hearing after he was detained. Id. at 1207. Here, Petitioner was scheduled for a bond hearing, but he withdrew his request. Thus, this is not a case where Petitioner has been denied due process; it was his decision to withdraw his request. In Rodriguez Diaz, the Ninth Circuit noted it was significant that the petitioner was not without process during his detention. Id.

In addition to the scheduled bond hearing, Petitioner has also received process in the form of individualized review by an IJ of his applications for asylum, withholding of removal, and deferral of removal under the Convention Against Torture. He has also received review of the decision by the BIA.

Second, the Ninth Circuit noted in Rodriguez Diaz that most of the detention period in that case "arose from the fact that [the petitioner] chose to challenge before the BIA and later this Court the IJ's denial of immigration relief." 53 F.4th at 1207-1208 (citing Demore, 538 U.S. at 531 n.14) ("'[T]he legal system is replete with situations requiring the making of difficult judgments as to which course to follow,' and, even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices.") (quoting McGautha v. California, 402 U.S. 183, 213 (1971)); see also Prieto-Romero v. Clark, 534 F.3d 1053, 1063-65 & n.9 (9th Cir. 2008) (holding that an alien's detention was not unconstitutionally indefinite when it was prolonged by a challenge to his removal order and distinguishing a case in which the government made an "unusual move" that delayed resolution); DHS v. Thuraissigiam, 591 U.S. 103, 1197 (2020) (holding that expedited removal proceedings did not violate the Suspension Clause because asylum seeker could obtain his liberty by consenting to removal)).  Here, as noted above, Petitioner has pursued asylum applications, appeals, and a petition for review to the Ninth Circuit, which is currently pending.  The Ninth Circuit in Rodriguez Diaz also found the petitioner's private interests were further diminished by the fact that he was subject to an order of removal from the United States. 53 F.4th 1208. Likewise, here, Petitioner is subject to a final order of removal. Thus, while Petitioner's private interest in being free from prolonged detention of approximately 22 months weighs in his favor, it is greatly diminished as he was scheduled for a bond review but withdrew his request, and his detention has been further prolonged due to his decision to challenge the removal order.

As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, the Court finds the factor to weigh in favor of the government. As noted above, Petitioner was scheduled for a bond review hearing but he chose to withdraw his request.  In addition, in Rodriguez Diaz, the Ninth Circuit noted that the petitioner "received further procedural

8

protections on the merits of his applications for relief from removal . . . includ[ing] the opportunity to seek a temporary stay of removal, which he sought and received." Id. Similarly, in this case, Petitioner has received the additional procedural protections in his applications for asylum and relief from removal, and in his request for stay of removal. In Rodriguez Diaz, the Ninth Circuit determined that "[a]lthough further review of his removal order would take additional time and could thereby prolong his detention, [petitioner] in this case has not demonstrated that the fact of the review process following its ordinary course itself created a due process violation." Id. (citing Demore, 538 U.S. at 531 n.14; Prieto-Romero, 534 F.3d at 1063-65 & n.9). In light of the foregoing, the Court finds that the existing agency procedures sufficiently protected Petitioner's liberty interest and mitigated the risk of erroneous deprivation.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. In Rodriguez Diaz, the Ninth Circuit noted the government's strong interest in the immigration context:

> The government clearly has a strong interest in preventing aliens from "remain[ing] in the United States in violation of our law." Demore, 538 U.S. at 518, 123 S.Ct. 1708 (quotations omitted). Enforcement of our immigration law serves both a domestic law enforcement and foreign relations function. The Supreme Court has thus specifically instructed that in a Mathews analysis, we "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." Plasencia, 459 U.S. at 34, 103 S.Ct. 321. "Over no conceivable subject is the legislative power of Congress more complete." Flores, 507 U.S. at 305, 113 S.Ct. 1439 (quotations and alterations omitted).
>
> This is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings. The government has an obvious interest in "protecting the public from dangerous criminal aliens." Demore, 538 U.S. at 515, 123 S.Ct. 1708 (noting the government's justifications for the mandatory detention policy in § 1226(c)). Through detention, the government likewise seeks to "increas[e] the chance that, if ordered removed, the aliens will be successfully removed." Id. at 528, 123 S.Ct. 1708; see also Nken v. Holder, 556 U.S. 418, 436, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) ("There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable ... permits and prolongs a continuing violation of United States law.") (quotations and alteration omitted).
>
> These are interests of the highest order that only increase with the passage of time. The longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal. The risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent. See Johnson v. Guzman Chavez, ––– U.S. ––––, 141 S. Ct. 2271, 2290, 210 L.Ed.2d 656 (2021); see also Demore, 538 U.S. at 519, 123 S.Ct. 1708 (noting that Congress was presented

with evidence that "[d]etention is the key to effective deportation") (quotations omitted). Indeed, the Supreme Court has specifically recognized Congress's determination that the government has been unable to remove deportable criminal aliens because of its initial failure to detain them. Demore, 538 U.S. at 519, 123 S.Ct. 1708.

Rodriguez Diaz, 53 F.4th at 1208.

The Ninth Circuit thus concluded that the government's interests were significant. For the same reasons expressed by the Ninth Circuit, this Court concludes that the government's interests herein are significant.

In sum, the Court finds that while Petitioner's private interest to be free from continued detention is substantial, the government interests are significantly higher. As noted by the Ninth Circuit, such "interests can be compared to those at stake in prior cases in which the Supreme Court has upheld immigration detention schemes." Id. at 1213 (citing Demore, 538 U.S. at 513; Carlson, 342 U.S. at 527; Flores, 507 U.S. at 303). It is also important to note that where courts have found a detainee's interests outweighed those of the government in similar immigration cases, they have done so in the context of providing a bond hearing before an IJ. Here, Petitioner was offered a bond review hearing but he chose to withdraw his request and seek alternative process. Thus, Petitioner "has received far more process than the detainees in those cases." Id. The Court concludes that in this case, the duration of Petitioner's detention has not exceeded the bounds of due process given the process Petitioner has enjoyed.

## III.     ORDER

For the foregoing reasons, IT IS HEREBY ORDERED:

1) Respondent's motion to dismiss (Doc. 12) is GRANTED;

2) The petition for writ of habeas corpus is DISMISSED; and

3) The Clerk of Court is DIRECTED to enter judgment and close the case.

IT IS SO ORDERED.

Dated:   **February 28, 2025**                    /s/ *Sheila K. Oberto*
                                                             UNITED STATES MAGISTRATE JUDGE